THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:15-cv-00043-MR-DLH

| | |
|---|---|
| BILTMORE AVENUE CONDOMINIMUM ASSOCIATION, INC., )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>HANOVER AMERICAN )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 26] and the Defendant's Motion for Summary Judgment [Doc. 30].

**I.    PROCEDURAL BACKGROUND**

On January 16, 2015, the Plaintiff Biltmore Avenue Condominium Association, Inc. ("Biltmore") initiated this lawsuit by filing a Complaint against the Defendant Hanover American Insurance Company ("Hanover") in the General Court of Justice, Superior Court Division, for Buncombe

County, North Carolina. [Doc. 1-1]. Hanover removed the action to this Court on March 2, 2015, on the basis of diversity jurisdiction. [Doc. 1].

In its Complaint, as amended, Biltmore alleged that Hanover breached its contract of insurance with Biltmore by failing to pay benefits arising from a July 28, 2011 fire loss. [Doc. 7]. Biltmore also asserted a claim for unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1, et seq. ("Chapter 75"). [Id.].

Hanover moved to dismiss both of Biltmore's claims. On September 3, 2015, the Magistrate Judge issued a Memorandum and Recommendation, recommending that Biltmore's breach of contract be dismissed as barred by the statute of limitations. [Doc. 14]. The Magistrate Judge recommended, however, that Hanover's motion be denied as to Biltmore's Chapter 75 claim. [Id.]. Hanover objected to the Magistrate Judge's recommendation regarding the Chapter 75 claim. [Doc. 15]. On February 2, 2016, this Court overruled Hanover's objection and adopted the Memorandum and Recommendation. [Doc. 18].

Both parties now move for summary judgment as to Biltmore's remaining claim under Chapter 75. [Docs. 26, 30]. The Court held a hearing on these motions on January 24, 2017. Having been fully briefed and argued, these motions are now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record or by showing that the adverse party cannot produce admissible evidence to support that fact. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the court that a triable issue exists. Id. Finally, in considering a party's summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the non-moving party, and

must draw all reasonable inferences in favor of the non-movant as well. Adams v. Trustees of Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

## III.  FACTUAL BACKGROUND

The following forecast of evidence is not in dispute. Biltmore owns a medical office building located at 445 Biltmore Avenue, Asheville, North Carolina (the "Building"). Hanover issued Biltmore a commercial property policy, Policy No. ZZR 8826745 00, covering the Building for the policy period August 17, 2010 to August 17, 2011 (the "Policy"). The Policy contains numerous forms describing the Policy's coverages, including (as is relevant here), an Ordinance or Law Coverage Endorsement, Form CP 04 05 04 02 (the "O&L Endorsement"), and the Advantage-Choice Property Broadening Endorsement, Form 411-0660 (12/09) (the "Broadening Endorsement").

Coverage C of the O&L Endorsement provides, in pertinent part, as follows:

> a.  With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
>
> (1)  Repair or reconstruct damaged portions of that building; and/or
>
> (2)  Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

4

when the increased cost is a consequence of the minimum requirements of the ordinance or law.

[Doc. 7-2 at 3]. The O&L Endorsement, however, excludes coverage for code upgrades for which the Building was not in compliance prior to the loss:

> G. Under this endorsement we will not pay for loss due to any ordinance or law that:
>
> 1. You were required to comply with before the loss, even if the building was undamaged; and
>
> 2. You failed to comply with.

[Doc. 7-2 at 5]. The O&L Endorsement is subject to a $2 million limit of insurance.

The Broadening Endorsement amends the standard property coverage form and provides a wide variety of new and substitute coverages, subject to the following provision:

> The coverages in this endorsement amend the coverage provided under the Building and Personal Property Coverage Form…through new coverages and substitute coverage grants. These coverages are subject to the provisions applicable to these forms, except as provided for and amended within this endorsement. **If any of the property covered by this endorsement is also covered under any other provisions of the policy of which this endorsement is made a part**, **or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages to apply to that loss**. The

5

> most we will pay in this case is the limit of insurance applying to the coverage you select….

[Doc. 7-3 at 2] (emphasis added). The emphasized portion of the above-quoted language is referred to herein as the "Selection Provision." With respect to O&L coverage, Coverage A(27) of the Broadening Endorsement provides, in pertinent part, as follows:

> c) With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
>
> (i) Repair or reconstruct damaged portions of that building; and/or
>
> (ii) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
>
> When the increased cost is a consequence of the minimum requirements of the ordinance or law.

[Doc. 7-3 at 17]. Unlike the O&L Endorsement, the Broadening Endorsement does not contain the same exclusion for pre-existing non-compliances. The Broadening Endorsement is subject to a $500,000 limit for O&L coverage. [Id. at 2].

On July 28, 2011, the Building sustained fire damage. Biltmore made a claim under the Policy and immediately decided to rebuild the Building. [Tessier Dep., Doc. 29-1 at 54]. It was determined that a number of code upgrades would be required to rebuild, totaling approximately $4.5 million.

[Id. at 46]. Included in this $4.5 million estimate was approximately $600,000 for installation of the sprinkler system that is the subject of this litigation. [Id. at 72]. Significantly, the Building was in violation at the time of the loss because it did not have a sprinkler system as required under the code. Thus, the installation of a sprinkler system was necessary in order to bring the Building into compliance with the existing code requirements. [Id. at 59-60].

On February 16, 2012, Hanover adjuster James Hennessey ("Hennessey") sent a letter (the "February 16 Letter") to Biltmore's designated representative, Charles Tessier ("Tessier"), outlining the Policy's coverage for code-related items. [Doc. 7-4 at 3-4]. On February 28, 2012, representatives from Biltmore and Hanover met to discuss certain coverage issues (the "February 28 Meeting"). At that meeting, Hennessey stated Hanover's position that Biltmore could claim O&L coverage under ***either*** the O&L Endorsement ($2 million) ***or*** the Broadening Endorsement ($500,000), but not both, pursuant to the Selection Provision. [Tessier Dep., Doc. 29-1 at 86-87]. Hanover has maintained this position since the February 28 Meeting. [Id. at 110]. Biltmore did not at that time raise any objection to Hanover's coverage decision and sought a payout under the O&L Endorsement. [Id. at 121 (Q: "Did you push back on February 28, 2012 and say, I understand that this is Hanover's position, but we think there is an extra

500,000?" A: "No. I said, Thank you for the $2 million.")]. Hanover thus issued a check to Biltmore for $2 million under the O&L Endorsement.[1]

Biltmore proceeded with reconstruction of the Building, and installation of the sprinkler system took place between September 2012 and May 2013. [Pl.'s Resp. to Def.'s Interrog. 9, Doc. 29-11 at 4]. Around the same time, Biltmore's ownership changed.[2] Subsequently, on August 2, 2013, Tessier sent Hennessey an invoice for the $500,000 limit of coverage under the Broadening Endorsement. [Tessier Dep. Ex. 20, Doc. 29-2 at 60]. Hanover denied that request on the grounds that the O&L Endorsement limits had been exhausted. This lawsuit followed.

## IV. DISCUSSION

In its sole remaining claim, Biltmore argues that Hanover violated N.C. Gen. Stat. § 58-63-15(11)(f) and thereby committed an unfair and deceptive trade practice in violation of Chapter 75 by denying Biltmore's claim for an additional $500,000 in O&L coverage under the Broadening Endorsement.[3]

---

[1] Hanover represents that it also has paid Biltmore approximately $12.5 million in non-O&L coverage under the Policy. [Doc. 30-1 at 7].

[2] The Biltmore Avenue Condominium Association, Inc. is owned and controlled by the owners of the individual condominium units within the Building. In 2012 or 2013, a majority of the units were sold to Mission Hospital. [Tessier Dep., Doc. 29-1 at 55].

[3] In its Amended Complaint, Biltmore also asserted that Hanover violated Chapter 75 by making various "misrepresentations" which led Biltmore to believe that it was able to

The subsection under which Biltmore is proceeding, § 58-63-15(11)(f), prohibits an insurer from "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C. Gen. Stat. § 58-63-15(11)(f). A violation of § 58-63-15(11)(f) by an insurance company constitutes a violation of Chapter 75 as a matter of law. Gray v. North Carolina Ins. Underwriting Ass'n, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000).

In the present case, Biltmore cannot establish a claim under § 58-63-15(11)(f) because Hanover's liability for an additional $500,000 in O&L coverage was not "reasonably clear." The Selection Provision provides that if the insured property covered by the Broadening Endorsement "is also covered under any other provisions of the policy of which this endorsement is made a part, or if more than one coverage under this endorsement applies, in the event of loss or damage, you may choose only one of these coverages

---

simultaneously claim O&L coverage under both the O&L Endorsement and the Broadening Endorsement. [See Doc. 7 at ¶ 23(b), (e), (f)]. In its Motion for Summary Judgment, however, Biltmore concedes that it did not rely on any alleged misrepresentations and states that it is no longer pursuing any Chapter 75 claim based upon fraud/misrepresentation. [See Doc. 27 at n.3 ("Biltmore does not sue Hanover for fraud/misrepresentation. To the extent the Amended Complaint indicates that Hanover deceived Biltmore, Biltmore hereby stipulates that it does not rely on any such allegations.")]. It appears that Biltmore is now proceeding solely on a claim based on a violation of N.C. Gen. Stat. § 58-63-15(11)(f). [See Doc. 34 at 1 ("Biltmore alleges that Hanover violated N.C. Gen. Stat. § 58-63-15(11)(f) . . . . The essential issue, therefore, is whether the coverage Biltmore seeks is 'reasonably clear.'")].

to apply to that loss." [Doc. 7-3 at 2]. Hanover took the position that Biltmore was permitted to select O&L coverage under the O&L Endorsement *or* the Broadening Endorsement, but not both. Because Hanover accepted a $2 million payout under the O&L Endorsement without reservation and proceeded with the rehabilitation of the Building, Hanover argues, Biltmore was not entitled to seek coverage for the cost of the sprinkler system under the Broadening Endorsement.

Biltmore, on the other hand, contends that the reference to "that loss" in the Selection Provision means that Biltmore was obligated to elect coverage only if the specific code-related loss at issue was covered by both endorsements. Thus, Biltmore contends, the fact that it sought O&L coverage for those code-related losses covered by the O&L Endorsement (i.e., costs which were a consequence of the minimum requirements of a previously enacted ordinance or law and with which the building had been in compliance prior to the loss), did not preclude it for also seeking O&L coverage for other code-related losses covered only under the Broadening Endorsement (i.e., costs which were a consequence of the minimum requirements of a previously enacted ordinance or law and with which the building had *not* been in compliance prior to the loss).

Biltmore argues that Hanover's interpretation of the Selection Provision is erroneous and that the Policy language should be construed in its favor. Whether Hanover's interpretation of the Policy language is legally correct, however, is not the issue. Rather, the pertinent inquiry at this stage in the proceedings is whether Hanover exhibited bad faith and denied Biltmore's claim when liability was "reasonably clear." The fact that Hanover's interpretation may be legally incorrect does not establish bad faith. "[A]dvocating a position that is ultimately determined to be incorrect does not necessarily demonstrate a lack of good faith in attempting to settle a claim." <u>Central Carolina Bank and Trust Co. v. Security Life of Denver Ins. Co.</u>, 247 F. Supp. 2d 791, 801 (M.D.N.C. 2003). Further, the fact that both parties present reasonable yet conflicting interpretations of the Policy language suggests that the existence of coverage was anything but "reasonably clear."[4] Because Hanover had a reasonable basis, based upon the language of the Selection Provision, to challenge the validity of Biltmore's claim for an additional $500,000 in O&L coverage, Biltmore's Chapter 75 claim based on

---

[4] Biltmore's assertion that Hanover's coverage position was manifestly unreasonable was belied by Biltmore's own arguments on the summary judgment hearing, where Biltmore's counsel alternately argued that the Selection Provision was (1) unambiguous, (2) patently ambiguous, and (3) latently ambiguous, thereby allowing for supplementation by parol evidence. Counsel's inability to articulate the nature of this provision illustrates how legally trained minds can quite reasonably differ as to the legal effect of this language.

a violation of § 58-63-15(11)(f) must fail. See Topsail Reef Homeowners Ass'n v. Zurich Specialities London, Ltd., 11 F. App'x 225, 234 (4th Cir. May 25, 2001) (rejecting insured's claim that insurer violated § 58-63-15(11)(f) where insurer had "reasonable bases to challenge the validity of [plaintiff's] submitted claim"); Riddle v. Auto-Owners Ins. Co., No. 2:08-CV-1-F, 2009 WL 2151386, at *6 (E.D.N.C. July 17, 2009) ("Section (f) does not apply because liability for the loss was unclear given that [insured's uncle] was suspected of setting the fire").

In arguing that Hanover failed to act in good faith, Biltmore relies heavily on the deposition testimony of Hanover's Rule 30(b)(6) witness, Paul Heywood ("Heywood"). Specifically, Biltmore contends that Heywood admitted in his deposition that the Policy language is ambiguous and that Biltmore could reasonably claim coverage under both Endorsements simultaneously for its code losses. [See Doc. 36 at 2-4]. A careful review of Heywood's testimony reveals no such admissions. Even assuming, however, that Heywood somehow had admitted the existence of coverage or of ambiguity in the contract language, such admissions do not create a genuine issue of fact as to whether Hanover acted in bad faith in denying the claim at the time that the decision was made. Biltmore has produced no forecast of evidence that Heywood was involved in the decision to deny

Biltmore's claim for the additional $500,000 in O&L coverage. Moreover, Heywood made clear in his deposition that he was not testifying to the "intended meaning" of the Policy language as he was not an underwriter, was not involved in the drafting of the Policy, and did not know the intended meaning of the Policy language. [Heywood Dep., Doc. 29-3 at 30, 36-7; Doc. 29-4 at 63].

Biltmore argues that Heywood's interpretation of the Policy language was binding because he was designated as a Rule 30(b)(6) witness for Hanover. Interpretation of the policy language, however, is a question of law. North Carolina Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). Moreover, Heywood testified only as to his own personal interpretation of the Policy language. [See Heywood Dep., Doc. 29-3 at 47 ("Well, [the term 'losses and costs" is] not defined in the policy, and I would only be able to address it from plain and reasonable use as my interpretation."); Doc. 29-4 at 8 ("All I can do is give you a reasonable explanation of how I would be looking at this from an adjuster perspective.")]. As such, Heywood's testimony regarding the interpretation of the Policy language is not binding on Hanover. See AstenJohnson, Inc. v. Columbia Cas. Co., 562 F.3d 213, 229 n.9 (3d Cir. 2009) (holding that testimony of insurer's Rule 30(b)(6) witness regarding "his own interpretation of the

13

contract" was a legal conclusion not binding on insurer); Bullard v. Wake Cnty, 221 N.C. App. 522, 535, 729 S.E.2d 686, 694 (2012) ("parties are not bound by testimony as to questions of law given by their Rule 30(b)(6) witnesses"). Even if Heywood's legal assertions were binding on Hanover, however, this still would not be of any help to Biltmore. If Heywood's opinions somehow bound Hanover, such opinions might have caused Hanover to be bound under the contract. The issue before the Court, however, is not whether Hanover breached the contract but whether Hanover's position was *unreasonable*. An insurer can erroneously deny coverage in breach of its contractual obligations, but Chapter 75 liability will not lie unless such denial is *unreasonable*. See Central Carolina Bank, 247 F. Supp. 2d at 801.

Biltmore has failed to produce a forecast of evidence from which a jury could reasonably concluded that Hanover acted in bad faith in adjusting Biltmore's claim. Hanover paid over $14.5 million under the Policy for damages to the Building from the 2011 fire, including $2 million in O&L coverage. Hanover consistently stated its position that the Selection Provision prohibited Biltmore from claiming O&L coverage under both the O&L Endorsement and the Broadening Endorsement and, as noted previously, that position was not manifestly unreasonable.

While Biltmore now argues that, under its interpretation of the policy, Hanover was contractually obligated to provide additional benefits under the Broadening Endorsement, Biltmore's contractual claim has been dismissed as time-barred. Thus, the proper interpretation of the contract language is no longer the pertinent issue. Rather, the issue that must be decided is whether Hanover acted in bad faith when coverage was "reasonably clear." Biltmore cannot simply restate its contractual claim under the guise of a Chapter 75 claim in order to defeat Hanover's motion for summary judgment. See <u>Lenoir Mall, LLC v. State Farm Fire and Cas. Inc. Co.</u>, No. 5:10-cv-00040-RLV-DSC, 2013 WL 3984511, at *4 (W.D.N.C. Aug. 1, 2013) ("merely reciting its breach of contract claim cannot help Plaintiff survive summary judgment under the banner of unfair and deceptive trade practices"). Having failed to present a forecast of evidence that Hanover acted in bad faith or that coverage was "reasonably clear," Biltmore's Chapter 75 claim must be dismissed.

For the foregoing reasons, the Court concludes that Hanover's Motion for Summary Judgment should be granted.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 26] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED**; and this case is hereby **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Order will be entered contemporaneously herewith.

**IT IS SO ORDERED.**  Signed: March 8, 2017

Martin Reidinger
United States District Judge